IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TILGHMAN C. PERRY, JR.,         :     CIVIL ACTION
                                    :
          Plaintiff,          :     NO.  06-1450
                                    :
   v.                     :
                                    :
JOHN E. POTTER, Postmaster General,  :
                                    :
        Defendant.       :

**FILED**

JAN 2   2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM

January 23, 2008

BUCKWALTER, S.J.

       Presently before the Court are Defendants' Motion for Summary Judgment (Docket No. 23) and Plaintiff's Answer in Opposition (Docket No. 28).[1]  For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

       Plaintiff, Tilghman C. Perry, Jr., became a permanent employee of the United States Postal Service in 1984, working in Detroit, Michigan. (Perry Dep. 18:12-16, June 14, 2007.)  The Postal Service terminated Plaintiff's employment in 1997,[2] allegedly because he had threatened his supervisor. (Perry Dep. 18:23-19:1; 87:25-88:1.)  After Plaintiff filed a Title VII

---

1.   Plaintiff, proceeding <u>pro se</u>, has provided to the Court only a four-page hand-written letter as Answer to Defendant's Motion for Summary Judgment.  Parts of the letter complain to the Court that some of Plaintiff's discovery requests were insufficiently answered or entirely unanswered. (Pl.'s Answer Opp. Summ. J. 1-2.)  To the extent that the letter embodies a motion to compel, it is denied because it is untimely.  Discovery was ordered to be completed by August 24, 2007. (Docket No. 16.).  Plaintiff's letter was received on November 21, 2007, and only after the Court issued an order for Plaintiff to answer Defendant's motion for summary judgment or have the motion be granted as uncontested. (Docket No. 27.)

2.   According to Plaintiff, he was not technically terminated; rather, he remained employed by the Postal Service during the course of his wrongful termination lawsuit.  When the parties settled, he was then allowed to resign. (Perry Dep. 87:1-8.)

employment discrimination lawsuit in federal court, the Postal Service agreed to a settlement in 1999, which included, among other things, a promise "not to disclose facts related to Plaintiff's termination from employment in response to an inquiry from any source outside the United States Postal Service." (Def.'s Mem. Sup. Mot. Sum. J., Ex. 3 ¶ 9.)   The Postal Service has not since employed Plaintiff.

After 1997, Plaintiff held a number of truck driving jobs, including temporary positions with the United Parcel Service (UPS). (Perry Dep. 27-39.)  Sometime between February and April 2005, Plaintiff applied for a permanent position with UPS in its West Chester, Pennsylvania, facility. (Id. at 38-39.)  UPS offered him a position in April (id. at 44:16-22.), subject to a thirty day trial period (id. at 52:5-14).  Plaintiff began this trial period on June 13, 2005. (Id. at 44:12-14.)  On or around July 18, 2005, UPS terminated Plaintiff's employment. (Wagner Aff. ¶ 6.)   According to Plaintiff, this decision came with no warning and in response to no incident; he performed his job adequately and to his supervisor's complete satisfaction. (Perry Dep. 51:2-5; 52:15-53:1.)  Plaintiff has further alleged that, in response to his inquiries, the UPS supervisor who delivered the termination notice failed to specify the reasons for the decision, vaguely referencing "work history," Plaintiff's "character," the fact that Plaintiff wanted to be home with his son (id. at 53:22-15), and that there was another more qualified candidate (id. at 103:7-104:7).

Deeply disappointed, Plaintiff went on to apply for other truck driving positions. (Id. at 64-69.)  Beginning in mid-September 2005, Plaintiff worked for Kemcorp. (Id. at 70:23-25.)  Kemcorp was a Highway Contract Route (HCR) contractor for the U.S. Postal Service, meaning it carried mail on behalf of the Postal Service between Postal Service facilities. (Id.

69:17-70:2; Harris Aff. ¶ 8.)  Plaintiff was hired to drive the transport trucks. (Perry Dep. at 71:8-10.)

As a transport truck driver, Plaintiff was told that he would have to undergo a security clearance check with the Postal Service. (Id. at 71:17-72:12.)  Kemcorp's contract with the Postal Service mandated this kind of clearance for anyone coming into contact with the mail. (Harris Aff. ¶ 10; Def.'s Mot. Sum. J., Ex. 6, Att. A at B.5.)  To perform the clearance, the HCR contractor would send an employee's information to a regional office of the Postal Service. (Harris Aff. ¶ 13.)  The regional office in turn would send the information to the U.S. Postal Inspection Service, which is the arm of the Postal Service that performs security clearances. (Id. ¶ 14.)  According to the Postal Service's guidelines on screening employees, when clearance is denied to an applicant, the Inspection Service sends a letter to the regional office "denying the clearance and indicating the reason for denial." (Def.'s Mot. Sum. J., Ex. 6, Att. B at 7 ¶ 6.)

Before Plaintiff's security clearance was completed, he received a temporary clearance. (Harris Aff. ¶¶ 11-12.)  About a month later, in October 2005, the U.S. Postal Service denied Plaintiff's clearance because it learned of Plaintiff's firing and the surrounding circumstances. (Perry Dep. 73:12-20; Harris Aff. ¶¶ 19-20.)  According to Plaintiff, a manager at Kemcorp delivered the news that his security clearance had been rejected.  The Kemcorp supervisor explained that a Postal Service employee had told him "that you threatened your boss in Detroit and you have to turn in your badge and you're not allowed on . . . postal or government property." (Perry Dep. 73:12-20.)  As a result of the denial of the security clearance and the disclosure, Kemcorp terminated Plaintiff's employment. (Id. 73-74.)

3

Plaintiff, proceeding pro se, now brings this action against John E. Potter, Postmaster General (hereinafter, the "Postal Service"), alleging that the Postal Service violated the 1999 settlement agreement by disclosing facts related to his termination to (1) UPS and (2) Kemcorp.[3] The Postal Service has filed the instant motion for summary judgment.

## II. LEGAL STANDARD

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Because a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

---

3. Because they rely on separate sets of facts, the Court will treat these two alleged breaches as essentially separate counts. The government contends that Plaintiff is no longer alleging that the Postal Service violated the settlement agreement by disclosing to Kemcorp the reasons for Plaintiff's termination. (See Def.'s Mem. Law Sup. Mot. Sum. J. 9.) As an initial matter, the Complaint clearly alleges in the Statement of Claim that the Postal Service disclosed the information to Kemcorp. (Compl. 1.) However, the government argues that Plaintiff has clarified his complaint through his deposition testimony. Noting that Plaintiff is pro se, the Court declines to agree. Early in Plaintiff's deposition testimony, the following exchange took place:

> Q: Going back . . . , do you allege in this lawsuit that the Postal Service violated the settlement agreement by revealing confidential information to any employer or prospective employer other than UPS and Kemp-corp [sic]?
> A: No. That's it as far as I'm aware.

Thus, there seems to be agreement at this point in the deposition testimony that there is a claim based on the Kemcorp disclosure. Plaintiff later expresses doubt in his deposition testimony about whether the language of the settlement agreement would preclude his claim to the extent it is based on the Kemcorp disclosure. (Perry Dep. 111:19-112:4.) However, Plaintiff's confusion stemmed mainly from the government lawyer's legal argument that the Kemcorp disclosure could not be the basis of a claim. (Id. at 111:19-114:12.) The Court declines to find that an unrepresented plaintiff's answers to this kind of deposition questioning constituted a withdrawal of his claim.

Where, as here, the burden of proof is on the nonmoving party, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325 (1986). For the nonmoving party to then satisfy its burden, it must set forth specific facts, and may not rely on "bare assertions, conclusory allegations or suspicions." Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## III. DISCUSSION

Plaintiff claims that the Postal Service violated the terms of a settlement agreement that resolved a Title VII employment discrimination case. These allegations amount to a claim of a breach of contract,[4] the elements of which are (1) a valid contract; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. Westover v. United States, 71 Fed. Cl. 635, 640 (2006).[5] The Postal Service does

---

4.  Typically a breach of contract claim against the federal government seeking damages in excess of $10,000 must be litigated in the United States Court of Federal Claims. Tucker Act, 28 U.S.C. 1491(a)(1). However, a district court has jurisdiction over contract claims brought against the U.S. Postal Service. See 39 U.S.C. § 409(a).

5.  Courts generally apply federal common law when deciding a claim of breach of a settlement agreement of a Title VII case. See, e.g., McRae v. Potter, No. 04-2261, 2006 WL 1644903, at *8 (D.N.J. June 12, 2006); Westover 71 Fed. Cl. At 640. However, the elements of a contract claim are the same regardless of which jurisdiction's law applies—federal common law, see, e.g., Westover 71 Fed. Cl. at 640, Michigan law, see, e.g., Wright v. Dunn, No. 06-12289, 2007 WL 2004650, at *7 (E.D. Mich. July 6, 2007), or Pennsylvania law, see, e.g., Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc., No. 02-CV-4373, 2005 WL 724117, at *14 (E.D. Pa. Mar. 29, 2005)

not dispute that Plaintiff has met the first two of these elements—that the settlement agreement is a valid contract and that the contract imposed upon the Postal Service an obligation "not to disclose facts related to Plaintiff's termination from employment in response to an inquiry from any source outside the United States Postal Service." (Def.'s Mem. Sup. Mot. Sum. J., Ex. 3 ¶ 9.) As to the third and fourth elements, the Postal Service puts forth different arguments as to the alleged disclosures to UPS and Kemcorp, respectively.

### A. Disclosure to UPS

The Postal Service first argues that Plaintiff has put forth no evidence that the Postal Service in fact disclosed to UPS facts related to his termination. (Def.'s Mem. Supp. Mot. Summ. J. 15-17.) The Court agrees. There is no evidence in the record that UPS ever received, or the Postal Service ever sent, information about the reasons for Plaintiff's termination. Plaintiff readily admits he can point to no document, nor to anything he was told, to support his conclusion that the Postal Service violated the settlement agreement. (Perry Dep. 96:24-97:7.) Instead, Plaintiff relies on speculation. He contends that after his termination from UPS, he tried to determine the real reason he had been fired, since there had been no incident or problem that he could recall that would have left his performance or character in question. He testified in his deposition how he came to the conclusion that the Postal Service breached the settlement agreement:

> I couldn't understand where [the decision] was coming from. So I thought [the termination] had something to do with race at that particular time. Until I went a little bit further and went to Kemp-Corp [sic], and then I said, well, wait a minute, [UPS was] doing background checks and background investigations at that time. So when he said, your work history, he's a better fit, your character, it just made sense.

6

(Id. 103:25-104:7.)  Plaintiff further explained,

> When [the Kemcorp manager] told me the specifics of the case in Michigan, then everything made sense to me.  I never had a problem.  Never missed one day at UPS.  Never was late.  Never got into any altercations.  And then, all of a sudden, I went from being one of the best employees to, sorry we got to let you go.  I worked twelve hours that day.  If they had a problem with me and my work history, my character, anything, why would they let me work twelve hours and then fire me.  It just didn't make sense.

(Id. 96:14-23.)  Thus, Plaintiff concluded, the Postal Service must have disclosed the facts surrounding his termination to UPS.  These are just the kind of "bare assertions, conclusory allegations or suspicions" that the Third Circuit has repeatedly stated are not sufficient to withstand a motion for summary judgment. See, e.g., Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); see also Smith v. Vidonish, 210 Fed. Appx. 152, 156 (3d Cir. 2006).

In addition to Plaintiff providing no specific facts to support his claim, the Postal Service has provided ample evidence that there was no disclosure to UPS.  A representative of UPS, which is not a party to this case, stated in an affidavit that UPS had received no information from the Postal Service regarding Plaintiff's employment—not even a verification that Plaintiff had ever been employed at the Postal Service. (Def.'s Mot. Sum. J. Ex. 5 Para 3-4.)  To substantiate this averment, UPS has provided a report produced by a third-party company hired to verify UPS's prospective employees' work history.  The report corroborates the account in the affidavit that the Postal Service failed entirely to verify Plaintiff's Postal Service employment. (Id. Ex. 5, Att. B.)

Because there are no specific facts showing that the Postal Service disclosed information about Plaintiff's work history, and there is ample evidence that the Postal Service did

not make such disclosure, the Court concludes that there was no breach of the settlement agreement by disclosing to UPS.

## B. Disclosure to Kemcorp

With respect to the alleged disclosure to Kemcorp, the Postal Service admits that it denied Plaintiff's security clearance. However, the Postal Service argues that there was no breach in doing so, and, even assuming a breach, Plaintiff can prove no damages.

According to the Postal Service, the disclosure to Kemcorp was not a breach because it was not made "'in response to an inquiry from any source *outside the United States Postal Service*.'" (Def.'s Mem. Supp. Mot. Summ. J. 18 (quoting the settlement agreement) (emphasis added by Defendant).) According to the Postal Service, the "inquiry" into Plaintiff's work history came from *within* the Postal Service for two alternative reasons: (1) the "source" of the inquiry was the Postal Service's regional office, which is, without question, within the Postal Service (id. at 19); and (2) Kemcorp itself, as a contractor to the Postal Service, is not "outside" the Postal Service (id. at 21). Thus, the Court must interpret the language of the settlement agreement—specifically, the words "source" and "outside"—to determine if the Postal Service's alleged disclosure violated its terms.

In interpreting the language of a contract,[6] "the paramount consideration . . . is the intent of the parties." In re Shenango Group Inc., 501 F.3d 338, 346 (3d Cir. 2007). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without

---

6.   These principles of contract interpretation are again basically the same whether we apply federal common law, see, e.g., McRae v. Potter, No. 04-2261, 2006 WL 1644903, at *8 (D.N.J. June 12, 2006), Pennsylvania law, see, e.g., Bohler-Uddeholm, Inc. v. Ellwood Group, 247 F.3d 79, 93 (3d Cir. 2001), or Michigan law, see, e.g., Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 455 (6th Cir. 2003).

reference to matters outside the contract." <u>Bohler-Uddeholm, Inc. v. Ellwood Group</u>, 247 F.3d

79, 93 (3d Cir. 2001) (internal citation and quotation marks omitted). If there are ambiguous

terms, the Court may then look to extrinsic evidence to clarify the intent of the parties. <u>See</u>

<u>McRae v. Potter</u>, No. 04-2261, 2006 WL 1644903, at *8 (D.N.J. June 12, 2006).

       Applying these principles, the Court concludes that these terms are not

ambiguous. First, the "source" of the inquiry was Kemcorp, not the Postal Service's regional

office. Plaintiff filled out a work history form given to him by Kemcorp employees. Kemcorp

then submitted the form to the Postal Service. (Harris Aff. ¶ 13.) By funneling the clearance

request through multiple offices within the Postal Service, the Postal Service did not change the

inquiry's source. The inquiry clearly had only one source—Kemcorp. Second, the intended

meaning of the word "outside" in this context is also clear. Kemcorp was not a part of the Postal

Service. It was an independent company that had a contract with the U.S. Postal Service. If the

parties meant to exempt disclosures within the Postal Service and those made to any company

with which the Postal Service contracted, it should have included such terms. The Court is

mindful that to some extent the Postal Service was required to disclose this information by the

legal obligations set forth in its contract with Kemcorp and, more generally, by the need to ensure

people handling the mail are trustworthy. However, this does not excuse the Postal Service for

breach for at least two reasons. First, the Postal Service could have simply denied the security

clearance without disclosing the underlying reasons to Kemcorp. Second, it could have included

in the settlement agreement a clause that allowed disclosure in the event that it had a legal

obligation to do so. <u>See, e.g.</u>, <u>Duse v. Int'l Bus. Machines Corp.</u>, 252 F.3d 151, 158 (2d Cir.

2001) (broadly construing a settlement agreement term that allowed disclosure when required by

9

law). There was no such clause.  Thus, the Court concludes that Kemcorp was a "source outside" the Postal Service.  Therefore, if it can be proven that the Postal Service disclosed facts related to Plaintiff's termination,[7] the Postal Service breached the settlement agreement.

Finally, it is the Postal Service's position that Plaintiff suffered no damages from the disclosure to Kemcorp, and thus, even assuming breach, his claim fails as a matter of law. (Def.'s Mem. Supp. Mot. Summ. J. 22-23.)  On the basis of the present record, the Court cannot agree.  It is unclear what would have occurred had the Postal Service not disclosed the underlying reasons for Plaintiff's termination.  Therefore, an issue of fact exists as to what, if any, damages Plaintiff suffered as a result of the alleged breach of the settlement agreement.

## IV. CONCLUSION

For the reasons stated above, the Court denies Defendant's Motion for Summary Judgment.  An Order consistent with this Memorandum follows.

---

7.   The Postal Service assumes for the purposes of this motion that once the facts underlying the termination were disclosed from the Inspection Service to the Postal Service's regional office, the information was then passed on to Kemcorp. (See Mem. Supp. Mot. Summ. J. 20.)  The Court also makes this assumption at this time.  However, it bears noting that this is an issue of fact, which has not been admitted to by the Postal Service.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TILGHMAN C. PERRY, JR.                    :          CIVIL ACTION
                                          :
              Plaintiff,                  :          NO.  06-1450
                                          :
       v.                                 :
                                          :          **FILED**
JOHN E. POTTER, Postmaster General,       :
                                          :          JAN 2   2008
              Defendant.                  :
                                                     MICHAEL E. KUNZ, Clerk
                                                     By_____ Dep. Clerk

_____

**ORDER**

       AND NOW, this 23rd day of January, 2008, upon consideration of Defendants'

Motion for Summary Judgment (Docket No. 23) and Plaintiff's Answer in Opposition (Docket No.

28), it is hereby **ORDERED** as follows:

       1.       Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's

claim that Defendant disclosed information to the United Parcel Service in violation of their

settlement agreement.

       2.       Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's

claim that Defendant disclosed information to Kemcorp in violation of their settlement agreement.

       3.       **TRIAL** is scheduled for Monday, February 25, 2008 at 10:00 a.m. in

Courtroom 14A. Pretrial memoranda an accordance with this court's pretrial and trial procedures, a

copy of which is attached hereto, are to be filed on or before February 15, 2008.

                            BY THE COURT:


                            *s/ Ronald L. Buckwalter, S. J.*
                            RONALD L. BUCKWALTER, S.J.

11

## PRETRIAL AND TRIAL PROCEDURES
## BEFORE JUDGE RONALD L. BUCKWALTER

PRETRIAL

1.      As soon as reasonably practicable after an action is filed or a case is

reassigned to Judge Buckwalter's calendar, the courtroom deputy, Matthew Higgins, will mail to

counsel a status report form which is to be completed and returned to this office within 30 days.

It is anticipated that an F.R.C.P. 26(f) conference will be held prior to the return of the status

report form.  Based substantially upon those reports, the court will issue a scheduling order as

prescribed by F.R.C.P. 16.  In some cases, either upon request of counsel or pursuant to Section

3:01 of the Civil Justice Expense and Delay Reduction Plan of this court or sua sponte, the court

will set a scheduling conference to establish the terms of the F.R.C.P. 16 scheduling order.

Subjects to be considered at such a conference are those set forth in F.R.C.P. 16(b) and (c).

2.      The court expects discovery to be conducted promptly, diligently and

fairly.  Because they have been established after careful consideration of the status reports of

each party, discovery deadlines as set forth in the scheduling order will be enforced.  Counsel

should advise the Court **before the date has run** of any compelling reason justifying an

extension or continuance of any scheduled date.  See F.R.C.P. 6(b).  Any request for an extension

or continuance should be made by formal motion and set forth the good cause for granting the

motion.  Agreement first should be sought from opposing counsel.  If there is an agreement

regarding a continuance or extension, a stipulation of counsel should be attached to the motion as

an exhibit.  Regardless of any such stipulation, however, the court's approval must be obtained

for any continuance or extension.

12

3.     The court will establish a specific trial date if counsel have persuaded the court that such a special listing is an indispensable requisite to an expeditious trial.  Normally, all cases shall be listed in the trial pool published in The Legal Intelligencer.  Every case in the trial pool will be deemed ready to proceed to trial upon 24 hours telephone notice to counsel.  The court will attempt to attach cases for trial as they are listed in the trial pool.

4.     Counsel should call the COURTROOM DEPUTY regarding any matters relating to the scheduling of pretrial conferences or hearings in any civil or criminal case, as well as any matters related to pretrial and post-trial motions in any CRIMINAL case.  Counsel should call Sharon Lippi, the JUDICIAL SECRETARY, regarding any matters relating to pretrial and post-trial motions in any CIVIL case.

5.     Contacting the court by letter or phone during the pendency of litigation is normally not appropriate for the following reasons:  (a) Pretrial matters involving discovery disputes or case dispositive motions should normally be handled by motion practice in accordance with Local Rules; and (b) Questions about scheduling whether involving dates or times of hearings or possible conferences with the court about any matters related to the case should be communicated orally or in writing to the courtroom deputy.

6.     Judge Buckwalter will utilize telephone conferences for non-complex pretrial conferences, scheduling changes, extensions of time, discovery disputes, settlement conferences, and other similar matters.  Counsel shall have the responsibility to initiate telephone conferences and to contact Judge Buckwalter's chambers only after **all** parties are present on the call.

13

7.     Judge Buckwalter permits counsel to speak directly to his law clerks regarding scheduling, notice of settlement, and similar administrative matters, with the understanding that counsel must carefully observe ethical considerations and avoid discussion of the merits of a pending case.  Law clerks may not render advice to counsel and have no authority to grant continuances or to speak on behalf of the court.  Joint calls by counsel for all parties are preferred.  If counsel for all parties are not present on the phone call, the caller must state whether opposing counsel has been contacted regarding the subject of the call.

8.     Upon completion of discovery, but no later than ten (10) days before a case is to be listed in the trial pool, counsel shall file a pretrial memorandum which may be supplemented up to 24 hours before the trial begins.  The pretrial memorandum shall include the following:

(a)     A brief, concise summary of the nature of the case.

(b)     A list of all witnesses to be presented with a brief statement of the nature of their testimony. Witnesses not listed may not be called in the party's case in chief.

(c)     A list of all exhibits pre-numbered and pre-exchanged among all counsel, including those exhibits whose introduction into evidence is objected to and the reasons for the objections.

(d)     Claimant's itemized statement of damages and other relief sought.

(e)     A statement of any anticipated legal issues on which the court will be required to rule, together with counsel's single best authority (case citation, Rule of Civil Procedure, Rule of Evidence, statute, etc.)

14

(f)     All stipulations of counsel and an itemized list of any
admissions to be read into evidence.

(g)     In all jury cases, proposed points for charge and in all non-
jury cases, proposed findings of fact and conclusions of
law.  Counsel have the right to file supplemental points,
findings and conclusions upon the close of testimony.

(h)     The court requires that all submissions to it be in duplicate.
An exception to this requirement is exhibits, a single court
copy of which is sufficient at the time of trial.  In certain
instances, the court will excuse its requirement for copies
of exhibits if the making of the same is unduly burdensome.

9.     Motions in Limine must be filed no less than ten (10) days before trial.
Responses must be filed no less than five (5) days before trial.

10.     All objections will be ruled upon in advance of playing videotapes to the
jury.  To accomplish this, all objections to video tapes must be filed no less than ten (10) days
before trial.  Responses must be filed no less than five (5) days before trial.

## TRIAL

11.     Because side bar conferences interrupt the flow of the trial and interfere
with the jurors' understanding of a witness' testimony, the court intends to avoid side bar
conferences.  Under most circumstances this is accomplished by virtue of counsel having
anticipated the legal issues and objections and raised them during pretrial proceedings or at a
recess or after adjournment.

12.     Court sessions involving jury trials will commence daily at 9:30 a.m. and
continue until 12:30 p.m., with a short mid-morning break.  Court will reconvene at 1:45 p.m.

and continue until 4:30 p.m., with a short mid-afternoon break. The 4:30 p.m. adjournment may be extended depending upon the transportation considerations of the jurors.

13.     Counsel has the responsibility to have all witnesses available in court as scheduled. Failure to do so may result in sanctions.

14.     Except for good cause shown, counsel shall be limited in the examination of a witness to direct, cross, redirect and recross. As to redirect and recross, counsel are not entitled to these as a matter of right.

15.     Whenever a deposition or portion thereof is to be read into evidence, a written designation of the pages and lines shall be furnished to opposing counsel and to the court at least 48 hours before commencement of trial. Opposing counsel shall submit any counter designations in a similar fashion within 24 hours.

16.     In conducting videotape recordings, counsel should do so with acute sensitivity realizing that the video tape may be shown to a jury. Thus, skillful organization of the testimony, elimination of unnecessary objections and conservation of time are essential in videotape recordings.

17.     Whenever a deposition or videotape is to be used, a transcript of the testimony shall be furnished to the court in advance.

18.     All exhibits, once identified, shall be maintained at all times in sequential order arranged according to each party. Each exhibit should be offered into evidence at the conclusion of a party's case. Normally, it is the court's policy to send out all exhibits admitted into evidence with the jury when they retire to deliberate. The only exceptions will be those exhibits which all parties agree or which the court, upon motion, determines should not go out

with the jury.  The court's policy on exhibits reflects its belief that well organized and identified exhibits are of great value to counsel in their efficient presentation of the case as well as to jurors in their understanding of the case.

      19.     Counsel shall conduct examination of witnesses from counsel table or from the lectern.

      20.     When necessary to an intelligent understanding of the testimony, counsel may display an exhibit specifically to the jury upon its admission by holding it directly in front of all jurors at once or by circulating the exhibit among the jurors.  In either case, counsel should request the court's permission before doing so.

      21.     Opening statements should be <u>brief</u> and <u>outline</u> <u>only</u> (<u>not</u> <u>argue</u>) the evidence counsel intends to present.

      22.     Summations should not exceed forty-five (45) minutes unless a shorter or longer time is established by the court.  Rebuttal argument by plaintiff shall ordinarily not exceed ten (10) minutes.

      These Pretrial and Trial Procedures are effective as of August 1, 2004.

17